UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JIRA C. WHYTE and CARLENE A. WHYTE,

                Plaintiffs,

        - against -

BAYVIEW LOAN SERVICING, LLC, JP
MORGAN CHASE BANK, N.A.,
PRESIDENT RICHARD O'BRIEN, and
C.E.O, JAMIE DIMON,

                Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-3301 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Jira C. Whyte and Carlene A. Whyte bring this action against Bayview Loan Servicing, LLC ("Bayview"), Bayview's President Richard O'Brien, JP Morgan Chase Bank, N.A. ("JPMC"), and JPMC's CEO James Dimon (collectively, "Defendants"), asserting, *inter alia*, claims under the Fair Debt Collection Practices Act, the Truth in Lending Act, and state tort law, regarding a purportedly fraudulent foreclosure of residential property they once owned. Now before this Court is Defendants' motion to dismiss the case in its entirety, arguing that: (1) Plaintiffs' claims are barred by *res judicata* and judicial estoppel; (2) the Court lacks subject matter jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* doctrine; (3) Plaintiffs failed to state a claim; and (4) service of the summons and Complaint was defective.

For the reasons set forth below, the Court concludes that it does not have jurisdiction over this matter under *Rooker-Feldman*, and further finds that Plaintiffs have failed to state a claim on any of their causes of action. Finally, because an opportunity to amend the Complaint would be futile, Defendants' motion to dismiss is granted with prejudice.

1

# BACKGROUND

## I.    Factual Background

Rife with legal conclusions and summaries of irrelevant cases, Plaintiffs' Complaint offers few operative facts of this case, such as the address of their property that was foreclosed on or the key dates in the foreclosure proceedings or their subsequent eviction.  (*See generally* Complaint ("Compl."), Dkt. 1.)  Therefore, the facts recounted below are drawn not only from the Complaint, but also from the underlying state court documents, of which this Court has taken judicial notice,[1] and from uncontested facts set forth in Defendants' motion papers.

On November 22, 2002, Plaintiffs executed a mortgage in favor of JPMC, encumbering a property located at 131-08 Farmers Boulevard, Springfield Gardens, New York (the "Property") as security for a loan for $152,000.  (Compl., Ex. A, Dkt. 1-3, at ECF 2[2]; *see also* Declaration of Ashley S. Miller, dated November 3, 2021 ("Miller Decl."), Dkt. 16-1, ¶ 2.)  On August 21, 2014,

---

[1] In addition to the allegations in the complaint, a district court may also consider

> (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint . . . , (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

*Doroz v. DeIorio's Foods, Inc.*, 437 F. Supp. 3d 140, 149 (N.D.N.Y. 2020) (collecting binding authorities); *see Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (holding that federal courts may "take judicial notice of relevant matters of public record"); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]").  In particular, federal courts routinely take judicial notice of state court documents that are "public court records" and are "[]material" to the federal court's disposition of a 12(b)(6) motion.  *See Thompson v. Global Contact Servs., LLC*, No. 20-CV-651 (MKB), 2021 WL 3425378, at *5–7 (E.D.N.Y. Aug. 4, 2021) (citing cases).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

JPMC assigned the mortgage to Bayview.  (Compl., Ex. C, Dkt. 1-3, at ECF 16–18; *see also* Miller Decl., Dkt. 16-1, ¶ 3.)

Following Plaintiffs' default on the mortgage, Defendant Bayview filed a lawsuit on December 30, 2016, in the Supreme Court of the State of New York, Queens County, seeking foreclosure of the Property.  (Miller Decl., Dkt. 16-1, ¶ 5; *see generally*, Miller Decl., Ex. D, Dkt. 16-5.)  Plaintiffs did not timely appear or answer the complaint in the state court foreclosure proceedings, leading to an order of default judgment dated to June 29, 2017, against Plaintiffs in favor of Defendant Bayview.  (Miller Decl., Dkt. 16-1, ¶ 6; *see generally*, Miller Decl., Ex. F, Dkt. 16-7.)  The state court entered a judgment of foreclosure and sale on November 22, 2017.  (Miller Decl., Dkt. 16-1, ¶ 6.)   On January 19, 2018, the Property was sold at a foreclosure sale, which generated approximately $130,000 in surplus money.  (Miller Decl., Dkt. 16-1, ¶ 7; *see generally*, Miller Decl., Ex. G, Dkt. 16-8.)

On April 23, 2019, Plaintiffs, proceeding with counsel, filed a notice of claim for the surplus money in the foreclosure action ("Surplus Money Motion").  (Miller Decl., Dkt. 16-1, ¶ 9; *see also* Ex. J, Dkt. 16-11.)  On October 11, 2019, the state foreclosure court appointed a referee to determine the amount of surplus money due to Plaintiffs.  (Miller Decl., Dkt. 16-1, ¶ 10; *see also* Ex. L, Dkt. 16-13.)  After the referee issued a report on the surplus money and confirmed Plaintiffs' portion of the funds, the foreclosure court granted Plaintiffs' Surplus Money Motion on February 10, 2021.  (Miller Decl., Dkt. 16-1, ¶ 12; *see also* Ex. N, Dkt. 16-15.)

## II.    Procedural History

Plaintiffs, proceeding *pro se*, filed the instant action on June 3, 2021.  Liberally construed, Plaintiff's complaint alleges that Defendants perpetrated fraud, violated the Truth in Lending Act ("TILA"), and violated the Fair Debt Collection Practices Act ("FDCPA").  (Compl., Dkt. 1, at 3, 4, 11, 13.)  In addition, the Complaint alleges that the Defendants violated certain federal laws,

and also states that it "comes under" Article III, section 8 of the U.S. Constitution, which defines the crime of Treason.[3]  (Compl. Dkt. 1, at 3.)  The Complaint requests "monetary relief of Eleven Million Dollars" on account of the "mental distress" caused by Defendants' "fraudulent and negligen[t] action[s]… [which] has resulted [in] a Tort."  (Compl., Dkt. 1, at 13.)

On September 14, 2021, Defendants filed a letter requesting a pre-motion conference, which the Court denied as unnecessary.  (Dkt. 9.)  Instead, the Court endorsed Defendants' proposed briefing schedule, which required Defendants to serve their motion on November 5, 2021, Plaintiffs to serve their opposition by December 6, 2021, and Defendants to serve their reply by December 20, 2021.  (10/07/2021 Docket Entry.)

Before the Defendants filed their motion to dismiss, Plaintiffs submitted a "Verified Answer" dated October 20, 2021, which "requested this court to strike [defense counsel's] letter and all briefs submitted by opposing counsel."  (Verified Answer, Dkt. 15, at 5.)  Plaintiffs' Verified Answer raised new claims, namely, that Defendants had violated Plaintiffs' Fourteenth Amendment due process and equal protection rights.  (Verified Answer, Dkt. 15, at 6.)  Defendants served their motion on November 3, 2021.  (*See* Dkt. 14.)  Although Plaintiff did not timely serve their opposition to Defendants' motion to dismiss, Defendants served their reply, and filed all of their motion papers, in accordance with the briefing schedule, on December 20, 2021.  (*See* Dkt. 19; *see also* Defendants' Reply Memorandum of Law Supporting the Motion to Dismiss ("Defs. Rep. Mem."), Dkt. 18.)

---

[3] The Complaint and Plaintiffs' briefs on the motion to dismiss further suggest that Plaintiffs' action arises under Article I, Section 8, clause 6 of the U.S. Constitution, which grants Congress the power "to provide for the punishment of counterfeiting the securities and current coin of the United States." (*See, e.g.*, Compl., Dkt. 1, at 3; Verified Answer, Dkt. 15, at 5.)

On December 22, 2021, Defendants received Plaintiffs' opposition brief, which the Clerk of Court docketed on December 28, 2021.  (Dkt. 20; *see also* Affidavit in Support of Opposition to Attorney Motion to Dismiss ("Pls. Opp."), Dkt. 21.)  With the Court's permission, Defendants filed a second reply in response to Plaintiffs' late opposition brief.  (Defendants' Second Reply Memorial of Law Supporting the Motion to Dismiss ("Defs. Sec. Rep. Mem."), Dkt. 22.)

Finally, Plaintiffs filed a document dated February 16, 2022, after the close of briefing, which the Court construes as a supplement to the Complaint.  (Supp. Compl., Dkt. 25.)  This document includes a "Statement of Facts," raises for the first time a claim against Defendants under the Real Estate Settlement Procedures Act ("RESPA"), and attaches exhibits.  (*Id.* at 2–12.)  In light of Plaintiffs' *pro se* status, the Court construes the facts alleged in this supplement to the Complaint, together with the facts alleged in the Complaint in deciding this motion.

## LEGAL STANDARDS

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).  Defendants raise three separate bases for dismissal under Rule 12(b)(6): *res judicata*, judicial estoppel, and failure to state a claim.  *See Mareclin v. Cortes-Vazquez*, No. 09-CV-4303 (RRM) (JMA), 2010 WL 5665037, at *2 (E.D.N.Y. Dec. 9, 2010) (explaining that "[m]otions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6)"), *report and recommendation adopted*, 2011 WL 346682 (E.D.N.Y. Jan. 28, 2011).  Because the Court holds that Plaintiffs' claims do not survive the Rule 12(b)(6) motion for failure to state a claim, it does not discuss or resolve Defendants' arguments for dismissal based on judicial estoppel or *res judicata*, or pursuant to Rule 12(b)(5).

## I.    Dismissal under Rule 12(b)(1)

"[W]hen a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first."  *Yusim v. U.S. Dep't of Hous. & Urb. Dev.*, 409 F.

Supp. 3d 125, 128 (E.D.N.Y. 2018) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).   This is because if a court determines that it lacks subject-matter jurisdiction, then the defendant's other "defenses and objections become moot and do not need to be determined."   *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019) (citation omitted).

In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted), while refraining from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).   The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."   *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   "Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking."   *Chestnut v. Wells Fargo Bank, N.A.*, No. 11-CV-3369 (JS) (ARL), 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012) (citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)).   District courts may consider evidence outside of the pleadings when resolving a motion to dismiss under Rule 12(b)(1).   *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makoraova*, 201 F.3d at 113)).

## II.    Dismissal under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).  "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).  District courts must interpret a *pro se* complaint "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (cleaned up).

## DISCUSSION

### I.   This Court has No Jurisdiction over Plaintiffs' Claims under the *Rooker-Feldman* Doctrine

Defendants argue five separate grounds for dismissal, starting with the argument that this Court has no subject matter jurisdiction because of the *Rooker-Feldman* doctrine.  Defendants contend that *Rooker-Feldman* applies to Plaintiffs' entire Complaint because their "sole purpose in bringing this action is to undo the results of the foreclosure action." (Defendants' Memorandum of Law Supporting the Motion to Dismiss ("Defs. Mem."), Dkt. 16-18, at 6.)  Plaintiffs respond that they are "not asking this court to reverse any decision of the lower court," (*see* Compl., Dkt. 1, at 3), and instead are "referencing" the state court judgments, primarily "to show the fraud [perpetrated by Defendants], which does not violate the *Rooker-Feldman* doctrine," (*see* Verified Answer, Dkt. 15, at 5; *see also* Pls. Opp., Dkt. 21, at 7–8 (same); Supp. Compl., Dkt. 25, at 12

(same)).  As this jurisdictional argument must be addressed before others, the Court turns first to the *Rooker-Feldman* argument.

### A.    Applicable Law

Under the *Rooker-Feldman* doctrine, federal district and circuit courts lack subject-matter jurisdiction over cases that are essentially "appeals from state-court judgments."  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."  *Hoblock*, 422 F.3d at 85; *see also Williams v. 2720 Realty Co.*, No. 12-CV-6408 (BMC), 2013 WL 55685, at *2 (E.D.N.Y. Jan. 3, 2013) ("[O]nly the United States Supreme Court is vested with jurisdiction over appeals from final state court judgments.").  "This comity principle seeks to prevent 'state and federal courts . . . [from] fighting each other for control of a particular case.'"  *Kropelincki v. Seigel*, 290 F.3d 118, 128 (2d Cir. 2002) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281 (1970)) (alteration in original).

Under Second Circuit precedent, there are four requirements for applying the *Rooker-Feldman* doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff "must complain of injuries caused by a state-court judgment"; (3) the plaintiff "must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."  *See McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007) (cleaned up).  If all of these requirements are met, the district court lacks subject matter jurisdiction over the claim.  *See Graham v. Select Portfolio Serv., Co.*, 156 F. Supp. 3d 491, 502 (S.D.N.Y. 2016).

Of the four *Rooker-Feldman* requirements, the second and third requirements are considered the "'substantive' requirements – present[ing] a less simple question" for courts to answer. *Charles v. Levitt*, 716 F. App'x 18, 21 (2d Cir. 2017). Because "federal suits that purport to complain of injury" caused by the defendants, often "in reality complain of injury by state-court judgments," *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018) (citation omitted), federal courts examining the substantive *Rooker-Feldman* requirements "must scrutinize the injury of which a plaintiff complains" to determine whether the "suit impermissibly seeks review and rejection of a state court judgment," *Charles*, 716 F. App'x at 21; *see also Hoblock*, 422 F.3d at 88 (courts must "consider whether the injury was produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."). One important indicator of whether a plaintiff's claims satisfy this second requirement is whether the plaintiff alleges any injuries that occurred before the state court judgment. *See Yan Ping Xu v. Suffolk Cnty.*, No. 19-CV-1362 (JMA) (ARL), 2021 WL 1163007, at *4 (E.D.N.Y. Mar. 26, 2021) (citing *Roberts v. Perez*, No. 13-CV-5612 (JMF), 2014 WL 3883418, at *3 (S.D.N.Y. Aug. 7, 2014) ("Most telling for purposes of *Rooker-Feldman*'s causation requirement, Plaintiff suffered no tangible injuries prior to the issuance of the state-court judgment.")). Where a plaintiff alleges no injuries before the issuance of the state court judgment, and any alleged injuries stem from the loss of their property, it is reasonable to infer that the plaintiff is claiming injury as a result of the judgment and therefore trying to undo it. *See Roberts*, 2014 WL 3883418, at *3 (applying *Rooker-Feldman* where "the only source of [the] [p]laintiff's current injuries is the as-yet-unsatisfied judgment").

## B.    Analysis

All of Plaintiffs' claims easily satisfy the first and fourth requirements of *Rooker-Feldman*. Plaintiffs lost their foreclosure action in state court. Even though Plaintiffs did not challenge the foreclosure action or the judgment of foreclosure of sale, they are still considered the "losers" of

the state court proceedings for the purposes of *Rooker-Feldman*. *See Kristopher v. Stone Street Props., LLC*, No. 13-CV-566 (RJS), 2013 WL 499752, at *3 (S.D.N.Y. Jan. 29, 2013) (considering plaintiff to be the "loser" for *Rooker-Feldman* purposes even though the judgment was entered in default). As for the fourth requirement, the parties do not dispute that the foreclosure judgment was entered on November 22, 2017, and the property was sold on January 19, 2018. (Miller Decl., Dkt. 16-1, ¶¶ 6–8; *see also* Exs. F, G, H, I, Dkts. 16-7, 16-8, 16-9, 16-10.) Therefore, the state court proceedings concluded years before Plaintiffs commenced this action on June 3, 2021.

With respect to the second and third requirements, this Court first examines Plaintiffs' fraud claims, before turning to their FDCPA and TILA claims. Plaintiffs contend that Defendants "knowingly committed fraud to the highest degree," and that this fraud caused "mental anguish" that was allegedly the result of "a lot of stress, to a point where [Plaintiffs] cannot maintain" their livelihoods. (Compl., Dkt. 1, at 13.) While Plaintiffs' allegations about the fraud are conclusory and confusing, the Court understands Plaintiffs to be arguing that Defendant Bayview "never owned the [promissory] Note" for the Property's mortgage, and therefore Defendants "ha[ve] in fact brought fraud into the [state] court [foreclosure proceedings.]" (*Id.* at 7.) Plaintiffs seek $11 million in damages for alleged injuries caused by the fraud. (*Id.* at 13.)

The Court finds that Plaintiffs' fraud claims are barred by *Rooker-Feldman*. As Defendants correctly point out, there is "no general exception to the [*Rooker-Feldman*] doctrine when it is alleged that the state court judgment was procured by fraud." (*See* Defs. Sec. Rep. Mem., Dkt. 22, at 1 (citing *Grundstein v. Lamoille Superior Docket Entries/Ords.*, 821 F. App'x 46, 48 (2d Cir. 2020)).) In fact, the Second Circuit has "clearly held that a plaintiff cannot rely on allegations that the state court judgment at issue was obtained fraudulently to avoid application" of the *Rooker-Feldman* doctrine, since such an exception "would require the federal courts to review the state

proceedings and determine that the . . . judgment was issued in error, which *Rooker-Feldman* instructs [lower federal courts] cannot do." *Fiorilla v. Citigroup Glob. Mkts.*, 771 F. App'x 114, 115 (2d Cir. 2019) (alterations in the original) (citation and internal quotation marks omitted).

To be sure, there are several recent decisions from the Second Circuit in which the court interpreted *pro se* complaints "as asserting fraud claims that are not barred by *Rooker-Feldman*, because they seek damages" for the allegedly fraudulent actions, "the adjudication of which does not require the federal court to sit in review of the state court judgment[.]" *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). Yet even when plaintiffs request damages for a fraud claim, the ultimate inquiry remains whether the fraud-related "damage complained of . . . comes from the unfavorable state court judgment." *Lorick v. Kilpatrick Townsend and Stockton LLP*, No. 18-CV-7178 (ENV) (RLM), 2021 WL 7906510, at *7 (E.D.N.Y. Aug. 20, 2021) (citation omitted), *report and recommendation adopted*, 2022 WL 1104849 (E.D.N.Y. Apr. 13, 2022); *see also Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18-CV-6324 (PAE) (HBP), 2019 WL 3685225, at *5 (S.D.N.Y. July 8, 2019) (finding allegations of "a pattern of allegedly fraudulent activity from the initial loan agreement" between plaintiff and the mortgagee is "inextricably intertwined" with the state foreclosure judgment) (citation and internal quotation marks omitted), *report and recommendation adopted sub nom. Gifford v. Knuckles, Komosinki & Elliot, LLP*, 2019 WL 3564581 (S.D.N.Y. Aug. 6, 2019).

Here, Plaintiffs' (conclusory) factual allegations on the fraud claim all relate to the loan agreement, the promissory note, and the mortgage, and whether Defendant Bayview had standing to foreclose on the Property.[4] There are no allegations that Plaintiffs' injuries occurred before the

---

[4] For example, one representative paragraph of factual allegations from the Complaint reads:

foreclosure judgment, and courts have recognized the absence of such injuries prior to the state court judgment as the "[m]ost telling" sign that Plaintiffs are actually attacking the state court judgment. *See Roberts*, 2014 WL 3883418, at *3. Furthermore, the only factual allegation that Plaintiffs appear to make in support of their claim of "mental anguish" is that they were homeless after being evicted "*[a]s a result of* the foreclosure of the Property*,*" (*see* Miller Decl., Ex. K., Dkt. 16-12, at ECF 8 (emphasis added)[5]), which further supports the conclusion that "the only source of Plaintiff[s'] current injuries" is the state court's foreclosure judgment. *See Roberts*, 2014 WL 3883418, at *3. Absent any allegations that further explain the damages Plaintiffs claim, the logical conclusion is that Plaintiffs' fraud-related injuries are "inextricably intertwined" with the state court judgment, and that Plaintiffs' fraud claims are thus barred by *Rooker-Feldman*. *See Yan Ping Xu*, 2021 WL 1163007, at *4 (finding that plaintiff's "damages claims, based on fraud and other purported misconduct" are barred by *Rooker-Feldman* where "the damages she seeks were caused by the state court orders at issue"). Therefore, even construing the complaint liberally, the Court can only construe the complained-of injuries of "mental anguish" and "losing their

---

Under the Consumer Credit Protection Act, Title 15 U.S.C. Chapter 41 § 1614(g): any transfers of the Whyte's mortgage Loan to multiple classes, would be in violation of Federal Statute, if those transfers have not been recorded in the Official Records of the Queens County Record's Office within 30 days along with notification [] that the transfers had occurred. As there are no recorded assignments of the Whyte's Mortgage to multiple classes, within 30 days, there has been a violation of Federal Law or multiple classes, [Defendants] do[] not have an interest in the Whyte's Intangible Obligation, and are not the owners of either the Whyte's Note or the Whyte's Mortgage.

(Compl., Dkt. 1, at 6.)

[5] This allegation appears in the affidavits that Plaintiffs' submitted in the underlying state court proceedings. (*See* Miller Decl., Ex. K., Dkt. 16-12, at ECF 8.)

livelihood" as allegations of injuries that were "produced by the state-court judgments" and not "merely ratified by such judgments."[6]

Separately, in their supplement to the Complaint, Plaintiffs appear to present a theory of fraud challenging the formation of the mortgage contract. Plaintiffs allege that they never received a loan from Bayview, that they in fact "got up from the table . . . , left the loan check and the promissory Note." (Supp. Compl., Dkt. 25, at 4.) Plaintiffs further claim that Defendants "signed the check 'for me'/in my place." (*Id.*) Yet, even under this separate theory of fraud, Plaintiff's claims are similarly barred by *Rooker-Feldman* because "attacking the very contract enforced by the state court judgment as fraudulent is a claim that cannot be stated independently of the prior state court judgment[.]" *See Desir v. Florida Cap. Bank, N.A.*, 377 F. Supp. 3d 168, 173–74 (E.D.N.Y. 2019).

Finally, the Court finds that Plaintiffs' TILA and FDCPA claims also invite the Court to review and reject the state court judgment. With respect to the TILA claims, Plaintiff alleges that there were "no recorded assignments of the Whyte's Mortgage" and no timely notification to Plaintiffs of such assignments, which constituted "a violation of Federal Law." (Compl., Dkt. 1, at 6.) But the Complaint does not include factual allegations on how these supposed violations of TILA injured Plaintiffs, let alone how any injuries are not "intertwined" with the state court foreclosure judgment. The Complaint's factual allegations for the FDCPA claim are even more

---

[6] Plaintiffs also suggest that they are seeking damages for Defendants' commission of some unidentified tort. (*See* Compl., Dkt. 1, at 13.) If Plaintiffs are alleging damages for a tort that Defendants committed causing them "mental distress," such a tort claim would also be barred by *Rooker-Feldman*. *See Worthy-Pugh v. Deustche Bank Nat'l Trust Co.*, No. 14-CV-1620 (AWT), 2016 WL 2944535, at *4–5 (D. Conn. Jan. 29, 2016) ("To the extent that the plaintiffs claim that the defendant intentionally inflicted emotional distress on the plaintiff by foreclosing on their house, such a claim is barred by the *Rooker-Feldman* doctrine," as that would also require federal court review of a state court judgment), *aff'd*, 664 F. App'x 20 (2d Cir. 2016).

sparse, with only a single reference to the statute and no allegations on how Defendants purportedly violated that statute, or even what the resulting damage was. Plaintiffs have failed to meet their burden to prove subject matter jurisdiction as the factual allegations for their TILA and FDCPA claims are bereft of details that would connect their claims to "conduct in executing and servicing the mortgage," which would mean these claims are exempt from *Rooker-Feldman*, as opposed to conduct that would directly implicate the foreclosure judgment. *George v. Nationstar Mortg., LLC*, No. 16-CV-261 (MKB), 2017 WL 3316065, at * 2 (E.D.N.Y. Aug. 2, 2017). To the extent that Plaintiffs are claiming that their "mental anguish" injury is connected to Defendants' alleged violations of TILA and FDCPA, the Court again finds that such complained-of injuries are caused by the state court judgment, and therefore the claims are barred by *Rooker-Feldman.*

For the reasons explained above, this Court lacks subject matter jurisdiction over Plaintiffs' fraud, TILA, and FDCPA claims. To the extent Plaintiffs also assert claims under RESPA or the U.S. Constitution, Defendants did not brief whether those claims should be barred by *Rooker-Feldman*. In any event, this Court explains why any additional claims should be dismissed in its discussion below of Defendants' Rule 12(b)(6) motion.

## II.    Plaintiffs' Complaint is Dismissed for Failure to State a Claim

Even if this Court had subject matter jurisdiction over the Plaintiffs' claims, this case would still be dismissed on Rule 12(b)(6) grounds, since the factual allegations Plaintiffs put forth are almost entirely conclusory and speculative, and fail to state a claim on any cause of action. Plaintiffs assert claims for violations of TILA, FDCPA, fraud, and arguably claims pursuant to RESPA, and various criminal statutes. Defendants correctly point out that the Complaint is "disorganized and incomprehensible" comprised of "a series of legal conclusions and bald references to causes of action, without any factual support," thereby falling well short of the "basic

pleading standard[s] of *Iqbal*, *Twombly*, and Federal Rule of Civil Procedure 8(a)(2).  (*See* Defs.

Rep. Mem., Dkt. 18, at 8–9.)

The gravamen of Plaintiffs' fraud argument is that the mortgage agreement is invalid,

arguing that the United States' financial system going off of the gold standard almost 100 years

ago was an unconstitutional act:

> There is no money. What money did they give me? Was the contract based on the
> lawful money of the United States?  No. If they gave me a check, there is no money,
> checks are debts [sic] instruments. Federal Reserve Notes are debt instruments,
> because I cannot pay a debt with a debt. When did I get the money? They still owe
> me. A debt is an IOU.  So when are they going to pay me? I could contest the loan
> because #1; There is no money. The US went bankrupt in 1933. In order to begin
> with Federal Reserve Note's [sic] you're committing an act of fraud because the
> Constitution clearly states what the lawful money of the United States is Gold and
> Silver . . . .

(Supp. Compl., Dkt. 25, at 4.)  As Defendants correctly point out, the FDCPA claim is similarly

underdeveloped.  (*See* Defs. Sec. Rep. Mem., Dkt. 22, at 3.)  Although Plaintiffs suggest that

Defendants Bayview and JPMC violated the FDCPA by "sending unsubstantiated demands for

payment," (*see* Pls. Opp., Dkt. 21, at 2), nowhere in their Complaint or any of their briefing papers

do Plaintiffs provide even the bare minimum information as to these purported demands for

payment.  Further, Plaintiffs mention only in their supplement to the Complaint, which was filed

after the close of briefing, that Defendants violated RESPA.  (Supp. Compl., Dkt. 25, at 2.)  Once

again, Plaintiffs do not put forth any factual allegations that would show how Defendants violated

that statute.

Beyond the largely unintelligible attacks on the loan agreement and the underdeveloped

statutory claims, Plaintiffs repeatedly state various regulations, criminal statutes, and provisions

of the Constitution, without any factual allegations.  (*See* Compl., Dkt. 1, at 7–8, 10–11; *see also*

Pls. Opp., Dkt. 21, at 2 (claiming that Defendants may have committed "mail fraud under federal

and state law" by allegedly "sending unsubstantiated demands for payment through the United States Mail System," and that Defendants committed crimes of "theft, fraud, conspiracy and racketeering").)  For example, Plaintiffs state in their Complaint and again in their briefing papers that "this complaint comes under Art I, sec 8, of the Constitution: Counterfeiting of Securities and current coins; Art III, Sec 3: Treason against the United States, which is a violation of the doctrine of unclean hands, a mortgage without a note is a nullity and is not enforceable."  (Compl., Dkt. 1, at 3.)  None of these baffling invocations to statutory provisions and regulations are accompanied by factual allegations that are sufficient to state a claim.[7]

## III.   Leave to Amend

The Second Circuit has cautioned district courts to "not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).  Moreover, "where a court lacks subject matter jurisdiction, it also lacks power to dismiss with prejudice."  *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).  Therefore, if *Rooker-Feldman* is the only basis on which a case is dismissed, the district court may not dismiss claims with prejudice.  *See Charles*, 716 F. App'x at 22.  However, if a

---

[7] Of course, even if there were factual allegations to support some of these claims, Plaintiffs would have no cause of action to pursue the claims under the criminal statutes.  *See Nath v. Select Portfolio Serv., Inc.*, 732 F. App'x 85, 87 (2d Cir. 2018) ("[N]o private right of action exists under criminal statutes absent an indication that Congress intended to create such a private right of action[.]").  Similarly, any due process or equal protection claims under the Fourteenth Amendment are "unavailing because Defendants are not state actors, but plainly private entities that had a contractual interest" in Plaintiffs' mortgage.  *Encarnacion v. RMS Asset Mgmt. LLC*, No. 17-CV-5299 (WHP), 2018 WL 4572240, at *4 (S.D.N.Y. Sept. 24, 2018) (citation and internal quotation marks omitted).  Finally, and needless to say, the Court banishes any suggestion that Defendants or their counsel committed crimes such as violating the Foreign Agents Registration Act, 22 U.S.C. § 611 *et. seq*., or treason, and dismisses Plaintiffs' spurious and irresponsible claims to that effect.  (*See, e.g.*, Suppl. Compl., Dkt. 25, at 5–6 (accusing defense counsel of acting as "a foreign Agent & Propagandist[]"); Verified Answer, Dkt. 15, at 2 (similar)).

complaint is dismissed on Rule 12(b)(6) grounds and "it appears that granting leave to amend is unlikely to be productive," then "it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)). "One appropriate basis for denying leave to amend is that the proposed amendment is futile." *Id.; see also Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014) ("[L]eave to amend need not be granted where the proposed amendment would be futile.").

Here, Plaintiffs' claims have been dismissed not only for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, but also for failure to state a claim under Rule 12(b)(6). As the Court has explained, Plaintiffs' Complaint is riddled with conclusory allegations and has a dearth of factual allegations. This is so even after Plaintiffs supplemented their Complaint following Defendants' full motion briefing. (*See generally* Supp. Compl., Dkt. 25.) Even giving full consideration to the factual allegations in Plaintiffs' supplemental filing, which included additional factual allegations and exhibits, the Court finds that Plaintiffs have failed to state a claim for any cause of action. Thus, based on the nature of Plaintiffs' claims, as reflected in their multiple submissions, the Court is convinced that allowing Plaintiffs another opportunity to replead their claims would be futile. Accordingly, the Court is not granting Plaintiffs leave to amend their Complaint again, and dismisses the Complaint with prejudice.

## CONCLUSION

For the reasons explained above, the Court grants Defendants' motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction, and dismisses it, with prejudice, for failure to state a claim.[8]  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  September 27, 2022
        Brooklyn, New York

---

[8] As Plaintiffs' claims have been dismissed for lack of subject-matter jurisdiction and for failure to state a claim, the Court need not address Defendants' other arguments for dismissal.

18